UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Angela S., | Civ. No. 20-2566 (WMW/BRT) |
| Plaintiff, | |
| v. | |
| Kilolo Kijakazi,<br>Acting Commissioner of Social Security, | REPORT AND<br>RECOMMENDATION |
| Defendant. | |

James H. Greeman, Esq., Greeman Toomey, counsel for Plaintiff.

Kizuwanda Curtis, Esq., Social Security Administration, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 27, 29.) The motions have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C § 636. For the reasons detailed below, this Court concludes that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record. Therefore, this Court recommends that Plaintiff's motion be granted in part, Defendant's motion be denied, and the case be remanded to the ALJ for further proceedings consistent with this Report and Recommendation.

## DISCUSSION

After a hearing on the matter, an ALJ denied Plaintiff's application for disability benefits on June 10, 2020, which became the final decision of the Commissioner. (Tr. 31.)[1] At step two of the analysis,[2] the ALJ found that Plaintiff suffered from the following severe impairments:

> [L]umbar spine disorder; cervical spine disorder; osteoarthrosis; left shoulder acromioplasty with resection of distal clavicle in 2012; right shoulder calcific tendonitis of the rotator cuff and mild acromioclavicular (AC) joint osteoarthritis; right heel Achilles tendinosis and mild osteoarthritis with spurring; fibromyalgia; and obesity.

(Tr. 22.) Notably, the ALJ found Plaintiff had no severe mental impairments.[3] (Tr. 22.) After concluding that Plaintiff did not meet a listing under step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to "perform less than the full

---

[1]   Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 26.)

[2]   The ALJ issued the decision following the sequential five-step evaluation process. At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

[3]   Plaintiff does not challenge any of the ALJ's findings regarding her physical impairments on appeal. (Doc. No. 28, Pl.'s Mem. 8.) She only challenges the ALJ's finding that her depression was non-severe. (*Id.*)

range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) . . . ." (Tr. 24.) The ALJ also determined that Plaintiff's RFC required various additional limitations, but none were based on Plaintiff's medically determinable mental impairments. (Tr. 24–25.) Considering that RFC and the testimony of the vocational expert at the hearing, the ALJ concluded that Plaintiff could perform her past relevant work as a hotel front desk clerk. (Tr. 30.) Thus, the ALJ found Plaintiff was not disabled.[4] (Tr. 31.)

The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Substantial evidence in the record may support two conflicting outcomes, creating a "zone of choice" in which the ALJ may exercise discretion to grant or deny benefits. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). This Court will not overturn an ALJ's determination if it falls within that zone, "even if

---

[4]    Plaintiff previously filed an application for disability with an alleged disability onset date of August 9, 2007. (Tr. 89.) On December 18, 2009, Plaintiff was granted disability benefits based on various physical impairments. (Tr. 73–83.) Plaintiff stopped receiving those benefits in March 2018. (Tr. 289.) Plaintiff filed a new application for disability benefits on October 17, 2018 (which is the application currently before the Court), again alleging a disability onset date of August 9, 2007. (Tr. 89.) After the ALJ hearing on June 1, 2020, Plaintiff amended her onset date to October 17, 2018. (Tr. 19.)

In Plaintiff's briefing before this Court, Plaintiff also represents that she filed a subsequent disability application alleging a later onset date of June 11, 2020, and that she was granted benefits based on that subsequent application on March 15, 2021. (Pl.'s Mem. 13.)

we might have weighed the evidence differently." *Id.* (citations omitted). However, "the substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F.Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

Plaintiff challenges the ALJ's determination at step two that her depression is a non-severe impairment. (Pl.'s Mem. 8.) A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).

Plaintiff began reporting depression symptoms at an appointment on October 1, 2018. (Tr. 427.) At that time, she completed the Patient Health Questionnaire-9 evaluation ("PHQ-9")[5] and received a score of thirteen, and Brian Cooper, PA-C prescribed her 20 mg of Cymbalta to address her depression symptoms. (Tr. 428–29.) At a follow-up appointment on October 15, 2018, she reported some improvement, but her

---

[5] The PHQ-9 is a tool used by health care professionals to evaluate the severity of a patient's depression symptoms. Pfizer, *Screener Overview*, Patient Health Questionnaire (PHQ) Screeners (last visited June 15, 2022), https://www.phqscreeners.com/select-screener. A range of scores from zero to twenty-seven are possible, with bands indicating certain severities: (1) zero to four indicates none or minimal depression, (2) five to nine indicates mild depression, (3) ten to fourteen indicates moderate depression, (4) fifteen to nineteen indicates moderately severe depression, and (5) twenty to twenty-seven indicates severe depression. Pfizer, *Instruction Manual*, Patient Health Questionnaire (PHQ) Screeners (last visited June 15, 2022), https://www.phqscreeners.com/images/sites/g/files/g10016261/f/201412/instructions.pdf.

provider increased her dosage from 20 mg to 30 mg. (Tr. 421, 424.) Plaintiff also took the PHQ-9 at that appointment and received a score of six. (Tr. 424.)

While Cymbalta seemed to temporarily help Plaintiff manage her depression, she returned in 2019 reporting continued and worsening symptoms. (Tr. 1118.) On March 6, 2019, she reported that Cymbalta was helping some, but not entirely, and Cooper referred her to behavioral health counseling and increased her dosage of Cymbalta to 60 mg. (Tr. 871–74, 1135.) The next day she received a score of eleven on the PHQ-9. (Tr. 1119.) She continued to report depression symptoms at other appointments in 2019 and receive similarly elevated scores on the PHQ-9. (Tr. 836, 840–42, 844, 858, 861–62.) On September 20, 2019, Krystal Enger, PA-C prescribed Plaintiff Wellbutrin to take along with Cymbalta. (Tr. 841, 1011.) Plaintiff continued to report depression symptoms and receive elevated PHQ-9 scores at various appointments in 2020 as well. (Tr. 829–31, 928–29, 952, 959–60.) Her last appointment evidenced in the record was on March 17, 2020. (Tr. 928–29.) Throughout the records her depression is regularly referred to as a "mild episode of major depressive disorder." (*E.g.*, Tr. 424, 864, 874.)

In her step two analysis, the ALJ found the state agency consultants' opinions on Plaintiff's depression to be persuasive.[6] (Tr. 23.) The state agency consultants provided

---

[6] The ALJ also considered the four areas of mental functioning described in 20 C.F.R. § 404.1520a at steps two and three. The ALJ found only mild limitations in all four areas, which is consistent with the findings of the state agency consultants. (Tr. 23, 94, 105, 119, 132.) As further explained below, because the ALJ placed such weight on the state agency consultants' opinions, which were limited in their review of the record, this Court finds it prudent to remand this case for expert consideration of Plaintiff's worsening depression symptoms in 2019 and 2020. It is necessary to reevaluate whether

5

their opinions on November 26, 2018, and February 4, 2019. (Tr. 89–99, 100–10, 113–25, 126–38.) In each of these reports, the state agency consultants found that Plaintiff's medical records on mental impairment indicated "no more than 'mild' limitations, if any." (Tr. 94, 105, 119, 132.)[7] Based on the filing dates of the state agency consultants' reports, however, it is clear they only considered records from Plaintiff's two appointments in 2018. Generally, "an ALJ may embrace a state agency psychological consultant's opinion even if it was made before the record was fully developed." *Kuikka v. Berryhill*, No. 17-CV-374 (HB), 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018). "An ALJ may also assign significant weight to the opinion of a state agency medical consultant who did not have access to all of the records, so long as the ALJ conducts an independent review of the evidence and takes into account the portions of the record the consultant had not considered." *Id.*; *accord Lilja v. Berryhill*, No. 16-cv-540 (TNL), 2017 WL 1183977, at *25 (D. Minn. Mar. 29, 2017).

Here, no state agency consultant reviewed and considered Plaintiff's 2019 and 2020 records, and it is unclear whether the ALJ conducted an independent review or took Plaintiff's 2019 and 2020 records into account. The ALJ generally refers to "[Plaintiff's] lack of ongoing professional mental health treatment . . . [and Plaintiff's] reported good

---

Plaintiff's condition was severe during that time period and whether her condition, as it was, required any limitations in her RFC.

[7]    During both the initial determination and reconsideration stages, the state agency consultants found Plaintiff had "[n]o mental medically determinable impairments established." (Tr. 94, 105, 118, 131.) The ALJ apparently disagreed with the agency consultants in this regard, as she did refer to Plaintiff's depression as a medically determinable impairment. (Tr. 23.)

response to medications, low PHQ-9 scores and relatively intact psychiatric observations," (Tr. 22), but it appears that the ALJ was only referring to the records that predated March 2019 (i.e., the records that the state agency consultants had reviewed). The ALJ did acknowledge some later records when she stated the following:

> [R]ecent treatment records do indicate that her providers added Wellbutrin to her medication and regimen. In 2020, her depression was uncontrolled and she has now been referred to a psychiatrist. . . . However, this worsening has not lasted 12 months is not [sic] consistent with the remainder of the record.

(Tr. 23.) These statements, however, are confusing because on the one hand, they acknowledge Plaintiff's worsening condition, and on the other hand, they are potentially contradicted by the record with respect to the length of time that Plaintiff's depression was worsening. It appears the ALJ's reference to the "worsening" is to Plaintiff's appointments from March 6, 2019 through March 17, 2020, in which she received elevated PHQ-9 scores and reported "poorly controlled" depression. (Tr. 829, 840, 842, 844, 929, 952, 960.) The ALJ states, however, that the "worsening" did not last twelve months. The record shows Plaintiff was presenting depression symptoms in appointments from October 1, 2018 until at least March 17, 2020, which is more than a twelve-month period. Additionally, if we only consider the so-called "worsening" period from March 6, 2019 to March 17, 2020, that period also lasted over twelve months. Therefore, without more explanation, the ALJ's statement is not supported by the record. Because of this, and because the ALJ relied on state agency consultants' opinions that pre-dated the Plaintiff's worsening condition, and because it is undisputed that Plaintiff's condition was worsening, the Court should remand this case. On remand, an expert or state agency

7

consultant should review and consider Plaintiff's worsening depression symptoms in 2019 and 2020 and provide an updated opinion on Plaintiff's RFC during that time period.[8] [9]

---

[8]   In addition, this Court concludes that the ALJ's error was not harmless. Courts in this district have held that "an error at step two may be harmless where the ALJ considers all of the claimant's impairments, regardless of whether they were found severe or non-severe, in the evaluation of the claimant's RFC." *Vicky R. v. Saul*, No. 19-CV-2530 (ADMN/ECW), 2021 WL 536297, at *11 (D. Minn. Jan. 28, 2021), *report and recommendation adopted by* 2021 WL 533685 (D. Minn. Feb. 12, 2021). Other courts in this district have held that "[a] step two error cannot be dismissed as harmless if the RFC finding omits the claimant's relevant functional limitations, and a remand would be necessary to correct the analysis." *Misty G. v. Berryhill*, No. 18-CV-587 (KMM), 2019 WL 1318355, at *4 (D. Minn. Mar. 22, 2019). Additionally, some courts in this circuit have refused to speculate about what the ALJ considered in their RFC determination when the ALJ is silent on a particular medically determinable impairment. *See Wyman v. Berryhill*, No. 17-CV-4174, 2018 WL 4016614, at *21 (D.S.D. Aug. 22, 2018) ("But the RFC analysis makes no mention of *any* affect that Ms. Wyman's migraine headaches, or lack thereof, on [sic] Ms. Wyman's ability to work. The court is left to speculate, therefore, about why this is so. This case must be remanded for clarification of this issue.").

Here, it is unclear whether the ALJ fully considered Plaintiff's worsened depression when determining her RFC. The ALJ did generically state that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]." (Tr. 23.) However, that one canned statement does not convince this Court that the ALJ fully "considered" Plaintiff's depression, especially when the ALJ relied on state agency consultants' opinions that were limited in their review, as explained above. For this same reason, the ALJ's statement that the "[RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," (Tr. 24), is not reflective of a consideration of the full record. These statements, in light of what they were based on, do not explain how any functional limitations relating to Plaintiff's depression were considered when determining the RFC. The decision leaves the Court to speculate about the ALJ's consideration of the entire record that related to Plaintiff's depression, especially those records from March 2019 forward. Accordingly, this Court concludes it was not a harmless error, and this Court recommends the case be remanded for further consideration of Plaintiff's depression.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 27) be **GRANTED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 29) be **DENIED**;

3. This matter be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C § 405(g) (sentence four), consistent with this Report and Recommendation.

Date: July 7, 2022                         *s/ Becky R. Thorson*
                                           BECKY R. THORSON
                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[9] This Court recommends remand for an expert or state agency consultant to fully review and consider Plaintiff's worsening depression symptoms in 2019 and 2020 so that they may provide an updated opinion to the ALJ. Nothing in this Report and Recommendation would preclude the ALJ from more fully developing the record on this issue if the ALJ determines a fuller record is needed either before or after the state agency consultant's additional review. Because of this option available to the ALJ on remand, this Court need not address Plaintiff's argument that the ALJ did not fairly and fully develop the record here. (Pl.'s Mem. 12–13.)